television. We're still a three-judge panel. Judge Hugg, who could not be here in person, is with us by our video hookup, and you can see him on the monitor right here. Good morning, Judge Hugg. Good morning. And he will participate just as if he were with us in person instead of with us virtually. So we will take the cases in the order listed on the calendar. I note only that the second case, Johnson v. Ashcroft, has been submitted on the briefs. So the first case for argument is Sagadak vs. Ashcroft. Ready to proceed. Good morning, Your Honor. My name is Tom Youngjohn, and I represent the petitioners in this case, Victor and Natalia Sahydak. Before I get into a summary of the arguments of the case, I did want to get out one point, and that is if the Ukrainian government had done anything at all, had lifted one finger to ensure the safety of my clients, they would still be in the Ukraine. Most importantly, with respect to the merits of the claim, the BIA erred when it failed to find a nexus between Mr. Sahydak's claim and one of the five protected grounds of asylum eligibility. Specifically, the BIA erred in failing to find that he will be persecuted not only on account of imputed political opinion, but also because of his membership in a particular social group. That social group is that of tax inspectors, or for that matter, any type of government investigator. Mr. Sahydak has a well-founded fear of persecution because it's... Let me ask you a few preliminary questions. Doesn't Mr. Sahydak have a timeliness problem with his application for asylum? That is a charitable way of phrasing it, Your Honor. His former counsel, now disbarred, no longer an attorney, failed to file his asylum application within the one-year deadline that she was required to do so. I want to address one point. The response to, or the answering brief of John Ashcroft, of the former counsel, John Ashcroft, the respondent in this case, the answering brief, indicated that the date on the asylum application was November 18th, 1998, and that's at page five of their answering brief. However, at Administrative Record, page 701, we find that the asylum application was actually dated February 13th, 1998, and this Court could only find the date of the application. Generally speaking, this Court cannot review asylum cases if they're not filed within the one-year deadline. And this one was not filed within the one-year deadline, right? Right. That's absolutely correct. So what do you want us to do? Well... I thought there was an issue here with the... You know, there's a one-year... There's an exception to that one-year bar. That is true. Exceptional circumstances. Exceptional circumstances. As I read the record here, it appeared as though you asked the I.J. to consider waiving or extending the deadline because of the alleged ineffective assistance of the prior counsel. Yes. And I just... It appears that the I.J. did not address that particular request. Is that right? That is correct. Now, what if we were to agree with you? What happens? Agree with me on that particular point that it wasn't timely... I'm sorry, that it wasn't timely filed or that it wasn't... No, that the I.J. did not address that particular issue. That is, your request to extend it for exceptional circumstances. Well, not under... I wouldn't... Exceptional circumstances is... was the remedy, really, for the immigration judge. I don't believe that this court, through the... at least through the legislation, can catch this case with the exceptional circumstances legislation. How about when they don't make a determination? When there is no determination? Well, in that case, there is something called equitable tolling, which this court can use. Equitable tolling is used to stop a limitation period from running. And we've listed the Socop case, for example. It is possible to, for this court, to toll the time period... Was it... Is it possible for us to toll it or is it possible for the BIA to toll it? It's possible for this court to toll it. Let me ask you this. Did you raise that tolling issue with the BIA? With the BIA, I raised exceptional circumstances because exceptional circumstances is the relief that the BIA could have... I mean, the BIA had the authority to use exceptional circumstances to go ahead and find that the asylum application was either timely filed or at least, because of sexual and exceptional circumstances, the BIA could address the merits of the claims. However, the BIA failed to so exercise its discretion in that regard. You see, Mr. Yangjian, here's the problem, I think, under Ventura. One, you're asking us to review, aren't you, the merits of the asylum claim, right? Yes, Your Honor. But the petitioner was, in effect, thrown out of the BIA because he didn't meet the timeless requirement. In other words, right, the agency held that he's barred by the one-year statute. And you're saying he shouldn't be barred because of equitable tolling or something like that. And shouldn't the BIA consider that first? And then before we consider that? Well, the BIA should have considered exceptional circumstances. And they said... But they never did, did they? Well, they said that we don't even... Yeah, that's the funny thing. They said when we did the motion... I don't know if it's a funny thing, but my question is this. In light of the fact that the BIA never considered that argument, I mean, shouldn't we send it back to the BIA for them to consider it? That would be one relief that you could provide for the situation, to remedy the situation. Yes, Your Honor. Now, he has also another claim, doesn't he? Well, you mean with respect to the merits of his claim? There are two ways that a nexus can be found to one of the five categories for which he could find relief. And the first would be imputed political opinion, which the immigration judge never discussed, although the immigration judge should have discussed it. And the other way that a nexus can be found between the persecution that my clients face and one of the five categories, five protected grounds of asylum eligibility, would be his membership in a particular social group. And I would like to address right now the first of those, the imputed political opinion. Mr. Sahaidach has a well-founded fear of persecution because his persecutors have imputed to him the political opinion that he supports the government and is against his persecutors. First, Mr. Sahaidach has established that he has been a victim of persecution because he credibly testified that he will be harmed by the individuals who he named as having committed tax fraud. His life was threatened, his wife was assaulted and later on he was killed. He has established that he holds a political opinion that he was employed as he was employed by the government and did his job as a tax inspector. Third, he has established that this political opinion is imputed to him by the persecutors. In Aguilera Coda versus INS, the Ninth Circuit held that, quote, it is not crucial whether the individual actually espoused the views of the government or whether he was a high-level or low-level employee. What is determinative is what the persecutors thought. There's another quote in that case that I believe is very... I don't know if you should spend too much time just quoting from these cases. You only have 56 seconds left, you know. Thank you, Your Honor. I appreciate that. The immigration judge's decision was not correct because it did not address Mr. Sahaidach's claim of ineffective assistance of counsel. It failed to find that he was persecuted on account of political opinion and his membership in a particular social group. It failed to shift the burden to the Immigration Service to demonstrate changed circumstances once Mr. Sahaidach proved past persecution. It failed to recognize that the persecution can be inflicted by nongovernmental actors. All of these errors are material to Mr. Sahaidach's case because they resulted in denial of his claims. Petitioner requests a grant of asylum or withholding of removal or the remedy which the Court earlier suggested. In the alternative, we request that this case be remanded to the BIA with direction that it remand the case to the immigration judge for a grant of asylum or withholding of removal. Thank you, Your Honor. All right. Thank you. We'll hear from the government now. Good morning, Your Honors. Leslie McKay for the Respondent, John Ashcroft. Your Honors, the critical case, the critical issue in this case is nexus. Whether the petitioner has established that their claimed harm relates in any way to a protected ground under the INA and the record of the court. Before we get to nexus and the merits, let's just deal with a few of these preliminary issues. Sure. Primarily, the timeliness issue with respect to the asylum applicant. Your Honor. It does appear that he asked the IJ and the BIA to extend the period on the basis of exceptional circumstances. Well, you withdrew some of your arguments, right? I did, Your Honor, yes, mostly relating to whether the Court should consider the Board's denial of the motion to reopen or the Board's streamlining order. And I apologize again to the Court. There was just a mistake by the briefing attorney in the date of the petition. How does that affect your answer to Judge Fah's question? It actually does not affect the answer insofar as the Board's streamlining order is before the Court. Yes, the petitioner did raise ineffective assistance of counsel. But the critical inquiry for this Court is whether the immigration judge made a decision under Section 208A2 of the INA. Once the immigration judge decided that the asylum application was not timely, 208A3 strips this Court of any further jurisdiction to consider the question of exceptional circumstances. It doesn't... Well, don't we have jurisdiction to determine whether we have jurisdiction to decide that issue? You do, Your Honor. If they never addressed the issue, what's there to review? Well, the question before the Court, though, is whether... You have to look at it to see, did they make a determination? And if they made a determination, then you're probably correct. But if they hadn't made any determination... Right. ...it seems like the BIA should make a determination. Correct. And the immigration judge did make an untimeliness determination at pages 286 to 298 of the record. But he didn't consider the extension. But that's not the question under the INA. The question is only whether he made a determination of untimeliness under 208A2. So even though the claimant raises a requested extension and there's no showing that they considered it, you can't remand it back to the board and say, consider it? That's correct, under 208A3 of the Act. How about equitable tolling? Again, the same argument. I would argue that it goes to the same thing. Once the untimeliness decision is made by the immigration judge, jurisdiction is stripped under 208A3. Well, isn't it an alternative argument, which might be just as feasible as that, under the statute, if the IJ or the BIA didn't consider an issue, then they didn't make a determination on it. But the IJ did make a determination on the untimeliness. He made a determination that the application was untimely under Section 208A2 of the INA. But he did not make a determination whether or not this case was eligible for equitable tolling, right? He did not make a firm determination. There was a little bit of colloquy on that point in the transcript. And again, I believe it's around pages 286 to 290 of the record. Excuse me. The BIA, however, went ahead and decided the case also on the alternate ground of the merits, did it not? Your Honor. Even assuming that this is timely filed, the BIA said that on the merits it would not prevail because it was not tied to one of the five reasons. That's correct, Your Honor. The Board summarily affirmed that decision by the immigration judge. There was a merits finding as well. Yes. So what does that mean? Do we review the merits? You're reviewing – well, it's difficult in this case also because you have two petitioners. And the husband is eligible for withholding only and subject to a higher burden. The wife is eligible for asylum and withholding and has a little bit lower burden. But we can't consider it then under your argument that we couldn't consider the merits of the – is it your argument that – is it your position that when he addressed the merits, he was addressing them with – the IG was addressing them with respect to asylum for Mr. – for the wife? No. Only for the wife. Only for the wife. But ultimately, Your Honor, it doesn't even – it doesn't even matter because these claims rise and fall on the same set of facts and they rise and fall on the same dispositive infirmity. And that is simply – How about the merits now? That is simply that there's not been a showing of nexus. What has – When you say nexus, you mean a connection to one of the five enumerated grounds. Exactly. Exactly. And the immigration judge found and the record compelled this conclusion that the petitioners were subject to a series of anonymous threats from criminals designed to intimidate the mail petitioner and to prevent their criminal activity from being disclosed so that they could continue with their money-making scheme. That's not persecution. But suppose – suppose the criminals had a nexus to the government, which they do. There's – In other words, you know, they were seeking, you know, government favors, in effect, through bribes, right? They attempted to bribe the mail petitioner, but he refused the bribe. And there was no connection. They just handed him an envelope of money and said, We prepared this for you. There was no particular connection at that point or discussion of, This is what we'd like you to do in exchange for this money. Don't you get the feeling that that's sort of a custom in that country? I don't – I don't know, Your Honor. I'm sorry. Why wouldn't this be a nexus to political opinion? Because, again, Your Honor, the record just doesn't compel that. The facts in this record compel only that these criminals wanted to avoid prosecution and they wanted to continue on with their scheme. There was no political opinion ever discussed in any of the anonymous phone calls received by the mail petitioner in the encounter that the female petitioner had on the bus. There's absolutely no indication from these people at any time that they were imputing a political opinion, that they believed him to have, or that he actually espoused some kind of contrary political opinion. Did the IG actually ask – Well, it was pretty clear that his – I'm sorry? Go ahead, Judge Hunt. It was pretty clear, was it not, that his political opinion was that the government tax laws should be enforced. I'm not sure that I would necessarily characterize that as a political opinion, but I don't believe the record compelled the conclusion that he communicated that to them. It was nothing more than he prepared his audit and refused their bribe and then later refused to change the audit. There was no discussion or communication of, I'm not going to change the audit because, or we think you're not changing the audit because. There's just no facts. What would be his reason for not changing it other than his political opinion that the tax laws should be enforced? You know, he could have simply wanted to do a good job for the government, as I do, Your Honor. I wouldn't characterize that as a political opinion necessarily. It's just that I like my job. I want to do it well. I hope that I do, and the same could be said for the male petitioner. You want it to be complete. Yes. Yes. I'm sorry, Judge Paez. Is it clear to you that the I.J. actually addressed political opinion and computed political opinion in his decision? I believe that the immigration judge ultimately simply found no nexus to any ground. I'm not sure that I could say on this record that he considered any particular ground over another, but he very clearly considered all the facts and just found that they did not. Well, he makes it. But he makes this statement on page 162 of the record. He says around two thirds of the way down. These individuals do not wish to harm him due to his political opinion. OK. Is that a consideration of, you know, that there is no nexus to political opinion? Well, then I would I would change my answer. I'm sorry. I didn't I did not travel with the entire record. We want him. They simply want to curse him not to testify against them. That is absolutely correct, Your Honor. I mean, it's not an extensive consideration, but it is a consideration. It is a consideration. And as the entire transcript really in this record reflects, the immigration judge was very thorough and considered everything in this record that could possibly lead to relief for these aliens. And unfortunately, it just doesn't rise to that level. It's just not connected sufficiently to a protected ground under the act to compel the conclusion that they are eligible for asylum or withholding of removal. And certainly in the male petitioner's case, withholding only is a higher burden of proof and more likely than not burden that he had to establish. And unless the court has further questions, I see that my time is running low, and I would simply request that the petition for review be denied. Thank you. All right. Thank you. We thank you both for your argument. This case is now submitted for decision. Next case on the argument calendar is.
judges: Hug, Tashima, Paez